## TAYLOR v. SHREVEPORT YELLOW CABS, Inc., et al. (MARYLAND CASU-ALTY CO., Intervener). *

No. 5171.

Court of Appeal of Louisiana. Second Circuit.

Nov. 6, 1935.

Pugh, Grimmet & Boatner and A. M. Simon, all of Shreveport, for appellants.

Chas. L. Mayer, of Shreveport, for plaintiff-appellee.

E. W. & P. N. Browne, of Shreveport, for intervener-appellee.

TALIAFERRO, Judge.

Plaintiff was run down by a taxicab of the defendant, near the intersection of Johnson street with Texas avenue in city of Shreveport, about 11 o'clock, p. m., October 27, 1934. He brings this action to recover damages for the injuries by him sustained, for pain and suffering, and for medical and hospital expenses incurred in treating him for said injuries. He alleges that he left the east side of Texas avenue, at Johnson street, the usual place for pedestrians to cross, and in a

careful manner undertook to walk to the opposite side thereof, and when he had reached a point a few feet west of the center of the avenue, defendant's cab, going in a westerly direction, struck him violently, knocked him to the pavement, from which he was rendered unconscious; that said taxicab was at the time being driven by an agent and employee of defendant company in the discharge of duties within the scope of his employment.

The specific acts of negligence attributed to defendant's operator and agent are that he was at the time of accident driving the cab at an excessive and unlawful rate of speed, in violation of the law of the city of Shreveport; that said driver was negligent, careless, and reckless in that he was not keeping a proper lookout and in failing to give any warning of his approach, and, further, did not have the taxi under proper control; that he was negligent in not seeing plaintiff in time to bring the machine to a stop and avoid striking him; that these acts of negligence constitute the sole and proximate cause of the accident.

Defendant carried a policy of public liability insurance with Traders & General Insurance Company, and that company was impleaded as defendant. Defendants admit the accident, and that the cab was being operated by an agent and employee of the insured, but the charges of negligence on part of said employee are specially denied, as well as all liability for the results of the accident. In the alternative, defendants plead that if it should be held by the court, for any reason, that the operator of the cab was negligent, and that such negligence was a proximate cause of plaintiff's injuries, then they show that he was contributorily negligent in the following particulars, without which the accident and injury to plaintiff would not have occurred, viz.:

"(a) The plaintiff, without looking to the right or the left for traffic, walked out into a main travelled roadway.

"(b) The plaintiff walked out into said roadway at a point other than an intersection, and not at a pedestrian crossing.

"(c) The plaintiff walked into said roadway and into the path of vehicles passing while talking to and listening to another pedestrian who was on a nearby sidewalk.

"(d) That plaintiff at the time of said accident, and prior thereto, was intoxicated, and in such condition attempted to cross a main travelled street.

"(e) That plaintiff still without looking in either direction for moving traffic, and at a point other than a pedestrian crossing, in the condition specified above, walked out into the street, and instead of moving directly toward the other curb or stopping to let defendant's cab pass, stepped or staggered suddenly into a vehicle belonging to the Shreveport Yellow Cabs, Inc.

"(f) That the negligent acts and omissions of plaintiff continued to the instant of the accident."

The Maryland Casualty Company intervened, and alleged that at the time plaintiff was injured he was in the employ of Tri-State Liquor Company, to whom intervener had issued its policy insuring the liquor company against any loss which it might sustain under the Employer's Liability Act of Louisiana (Act No. 20 of 1914, as amended); that intervener, in fulfillment of its obligation under said policy, had paid compensation to plaintiff, and medical and hospital expenses for his account, amounting to $291.34, which are itemized; that under said law it is legally subrogated to all rights the plaintiff, as employee, has against the defendants to the total amount it has paid or for which it is liable. Judgment was prayed for in consonance with the allegations of the petition of intervention.

After trial had on the issues tendered by the petitions and answers, there was judgment for plaintiff against defendants in solido for $1,000, and in favor of intervener, and against defendants, for the amount sued for by it. Defendants appealed. Plaintiff prays for increase in the judgment in his favor.

■ On May 17, 1935, defendants filed supplemental answer praying for trial by jury. This was objected to on ground that it came too late, the case having been put at issue and having been fixed for trial. The objection was sustained and trial had without intervention of a jury. Appellants here complain of error in this ruling and insist that their application for jury trial was timely. The record facts are these: Defendants filed answers on April 17, 1935. On April 25th counsel who prepared and filed these answers, with approval of the court, withdrew from this case, and on their application defendants were granted a stay of

proceedings of twenty days to "enable them to employ other counsel and for the preparation of such other counsel to defend the case." On May 8th, on motion of plaintiff's counsel, the case was fixed for trial on May 16th, and on May 11th, on application of defendants, through new counsel, this fixing was upset and case refixed for trial on May 23d.

The position of appellants is not well founded. Article 495 of the Code of Practice is clearly against their contention. In part it says: "The defendant, in order to avail himself of the same privilege, must pray for a jury in his answer, or previous to the suit being set down for trial." Louisiana State Bank v. Duplessis, 2 La. Ann. 651; Gallagher et al. v. Hebrew Congregation of Baton Rouge, 34 La. Ann. 526.

These two cases hold that if a case has been set for trial and continued without definite fixing of trial date, that a prayer for jury trial filed while this status exists is timely; but where, as in the present case, trial is postponed to a definite date and trial is had on that date, the prayer for jury filed after the case has been refixed for trial comes too late. The case of Town of Minden v. Stewart et al., 142 La. 467, 77 So. 118, relied on by appellants, does not conflict with the plain provisions of the Code of Practice, nor with the two cases cited. It does not support appellants' contention.

The lower court properly denied the prayer for trial by jury.

Plaintiff's version of the accident is substantially as follows: That he was assisting in loading a car of liquors for his employer, Tri-State Liquor Company, about 11:30 o'clock the night of the accident, and was directed by an assistant clerk to go across Texas avenue to buy some soda water; that he walked down the street (some 80 feet) to Johnson street, which intersects Texas avenue, but does not extend beyond its western side; then, before starting across the intersection, he looked east and west and saw no cars approaching from either direction, and when two steps across the center of Texas street he was suddenly and violently run into by defendant's cab and knocked unconscious. At this point the street is 36.8 feet wide. Therefore, according to his testimony, plaintiff had gone about 25 feet into the street before being run down. His testimony is substantially corroborated by two other colored men. The reason given by him for not proceeding directly across the street from his employer's business place to get the soda water, is that he thought he could purchase same from a grocery store down the street towards Johnson street, but found this store closed. He is positive he did not observe the cab before being knocked down by it. The fact that he stepped in front of it proves this.

Defendant's driver, P. F. Sparks, a white man, gave the following version of the accident: That when he was opposite the Tri-State Liquor Company's place he saw plaintiff step from the sidewalk and start across the street, a distance of about 50 feet from the intersection, and then says:

"Q. Did you see him as he stepped off of the curb? A. Yes, sir.

"Q. What happened then? A. Someone hollered on the same side of the street that he was that is where he stepped off of the curb and he kind of turned his head over his shoulder and kept walking fast and was going in the opposite direction and there was a car coming in the opposite direction and that blotted him out of my view and I saw him again, he stepped in front of my automobile.

"Q. You mean there was a car coming from the fair grounds toward Shreveport? A. Yes, sir.

"Q. That passed between Gill and your car? A. Yes, sir.

"Q. That cut off your view? A. Yes, sir.

"Q. The next time you saw him how far was he from you? A. About that far. (Witness illustrating with his hands, the distance of about two feet.)"

He further stated that his cab was traveling not over 28 miles per hour, and that he brought it to a dead stop within four feet after striking plaintiff. His version of the facts of the accident is corroborated in most of its material aspects by three other white men who were eyewitnesses. These witnesses, however, say plaintiff was between 25 and 30 feet from the intersection, and one of them testified the cab was stopped at edge of intersection. One other of them, a man by the name of Crocker, was driving a cab, following Sparks, and is certain Sparks' cab was not going over 30 miles per hour. All of the witnesses, on both sides, ex-

cept Crocker and Sparks, were on the side of Texas avenue towards which plaintiff was going.

We are convinced from the testimony that plaintiff undertook to cross Texas avenue 25 or 30 feet from the intersection, and that his attention was first attracted by some one calling to him at his rear, and then towards a car approaching from his left, and that he continued to watch this car, neglecting to observe traffic conditions towards his right, until it passed him; that as he moved forward immediately behind the car going easterly, he was struck by defendant's cab, and was not intoxicated. Notwithstanding all this, the negligence of defendant's driver, clearly shown by his own testimony, was the proximate cause of the collision. Had he not observed plaintiff, endeavoring to cross the street, and the peril of his situation, in time to have stopped the cab or brought it under such control as to have averted injury to him, regardless of his movements, the case would present an entirely different legal aspect; but he admits he saw plaintiff as he left the sidewalk (we think not less than 75 feet away), and heard some one hollo to him from the direction whence he had come, and observed that he turned his head in that direction, and continued to walk rapidly towards opposite side of the street. He passed from the driver's view because of the intervening car meeting him. This driver knew well that plaintiff was trying to cross the street, and knew equally as well that he had to pass behind the on-coming car in order to do so. Therefore, when he admits he continued his pace, without doing anything to avert running plaintiff down, whom he knew was almost in front of him, not even sounding the horn, he convicts himself of the grossest sort of negligence. It is true, as argued, that plaintiff was not crossing the street at the intersection, but, in view of Sparks' admission that he saw him in time to have avoided running him down, the same duty rested on Sparks to have employed every available means to prevent the accident as would have devolved upon him had plaintiff been in the intersection.

In the present case, the driver of the cab had knowledge of plaintiff's presence in the street ahead of him and should have governed himself accordingly, whereas, in approaching an intersection the driver is under the legal duty to operate his car in such manner as to be able to avoid injuring a pedestrian who may be crossing at the time, and of whose presence the driver may not have had prior knowledge.

Plaintiff contends that even though it be held that he was negligent in trying to cross the street away from the intersection, and in not seeing the lights of defendant's cab, visible to him for over 50 yards, that, none the less, defendant is liable for the results of the accident because its agent had the last clear chance of avoiding it. Defendant parries this contention by pleading that plaintiff's negligence continued to the moment of the accident, concurred with that of its agent, and, therefore, he is barred from recovery. A decision of the questions arising from these two positions turns upon whether plaintiff's negligence was a proximate cause of the accident. His negligence did continue to the moment he was injured; but, as said before, such negligence was not a proximate cause of the accident.

The jurisprudence of the state is replete with cases in which these doctrines are discussed. Energetic counsel in this case, we feel sure, have cited all of them. No good purpose would be subserved by discussing any of them; to do so, and to differentiate those cited by appellants from the case at bar would unnecessarily prolong this opinion. Every case must be determined from its own facts. We find a succinct statement of the principles of law applicable to "Last Clear Chance" doctrine in Restatement of the Law, § 480, Verbo ."Torts," which we quote:

"A plaintiff who, by the exercise of reasonable vigilance could have observed the danger created by the defendant's negligence in time to have avoided harm therefrom, may recover if, but only if, the defendant

"(a) knew of the plaintiff's situation, and

"(b) realized or had reason to realize that the plaintiff was inattentive and therefore unlikely to discover his peril in time to avoid the harm, and

"(c) thereafter is negligent in failing to utilize with reasonable care and competence his then existing ability to avoid harming the plaintiff."

Amplifying these principles, the editor, referring to an illustrative case of his

own, says: "Therefore, if there is anything in the demeanor or conduct of the plaintiff which to a reasonable man in the defendant's position would indicate that the plaintiff is inattentive and, therefore, will or may not discover the approach of the train, the engineer must take such steps as a reasonable man would think necessary under the circumstances. If a train is at some little distance, the blowing of a whistle would ordinarily be enough, until it is apparent that the whistle is either unheard or disregarded. The situation in which the plaintiff is observed may clearly indicate that his inattention is likely to persist and that the blowing of the whistle will not be effective. If so, the engineer is not entitled to act upon the assumption that the plaintiff will awaken to his danger but may be liable if he does not so reduce the speed of his train as to enable him to stop if necessary."

 Applying the quoted principles and the reasoning in amplification thereof to the facts of the present case, defendant's agent's negligence, as being the proximate cause of the accident, becomes obvious. He had the last clear chance to avoid the accident, but failed to avail himself of it.

 Plaintiff is 63 years old. When injured, his wages were $10.50 per week. He was in good physical condition at the time. The blow from the cab knocked him unconscious, which continued for a few hours only. He sustained a compound fracture of the right mandible and a perforation extending entirely through the cheek, plus two broken teeth and lacerations of the mouth. The roots of the teeth had to be removed. The right knee was also injured, and while it has practically recovered therefrom, bows when plaintiff stands erect on it. This condition cannot be corrected in the opinion of the attending physician. Plaintiff was confined to bed in a sanitarium for eighteen days, and was under treatment and observation of a physician and dentist until about April 1, 1935. However, it is disclosed that he resumed work as porter of his employer two months after the accident and continued to perform the duties of that position until the employer went out of business in the spring of 1935. The evidence supports the conclusion that plaintiff's recovery from his injuries was unusually rapid, and that no permanent disability will result therefrom. There is a paucity of testimony bearing upon the amount of pain and suffering endured by him. That he did experience considerable pain is obvious from the nature and extent of his injuries. He testified on trial of the case, eight months after the accident, that at times the injured knee pained him. We think the judgment in his favor should be increased to $2,000, from which $291.34, with interest, should be paid to Maryland Casualty Company.

Therefore, for the reasons herein assigned, the judgment in favor of plaintiff, appealed from, is amended by increasing amount thereof to $2,000 with interest; from which amount the Maryland Casualty Company, intervener, is entitled to be paid $291.34, and to this extent its right of precedence to payment over plaintiff is hereby recognized; as amended, the judgment appealed from is hereby affirmed, with costs.